HILARIO SANTIAGO RIVERA, Plaintiff, Appellant, and Appellee, *v.* DR. E. MALDONADO SIERRA, Defendant, Appellee, and Appellant.

Nos. R-64-13, R-64-16.     Decided January 19, 1965.

---

*Dubón & Dubón* for appellant and appellee. *Fiddler, González & Rodríguez,* and *Luis F. Candal* for appellee and appellant.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

Defendant commissioned plaintiff to engage in certain activities in connection with his real estate business. In a letter dated December 9, 1957 the defendant stated the terms under which plaintiff would receive compensation for his services. Such terms were set forth as follows:

"1. Concerning the exchange of the farms I own in Trujillo Alto, with Home Builders Corporation, your commission shall be 5 percent on the price stated in the deed by virtue of which the deal was transacted, or, 5 percent of $252,800, which amounts to $12,640.

"2. Regarding the industrial development located in Hato Tejas you alone will be engaged in procuring its sale, whether sold partially by lots or as a whole.

"3. In deals in which you shall have participated and I have been the purchaser, you shall be the broker at the time of the sale and you shall receive a commission of 2 percent of the selling price.

"4. In the marble business you shall be the exclusive sales agent for the production of the factory and shall receive a commission of 2 percent of the total amount of the sales."

On March 3, 1959 the defendant wrote the following to the plaintiff:

"Fourteen (14) months have already elapsed and since it has been impossible for you to move any of these properties, or make any definite deal in connection with any one of them, therefore, in view of said situation, I feel justified in modifying our agreement to the effect that you will be entitled to receive.

only the commission corresponding to whatever sales are made with your direct participation."

The plaintiff filed this action alleging that "the defendant owes the plaintiff the amount of $100,000 for his services as real estate broker, under the terms included in a letter-contract dated December 9, 1957 which the defendant sent him . . . ."

The complaint was sustained. The defendant was ordered to pay the amount of $33,340 deducting therefrom the amount of $5,211.85 which the defendant had already paid the plaintiff, plus $1,500 attorney's fees.

Both parties requested a review of the judgment. We consolidated the petitions.

Plaintiff claimed the commission corresponding to the sale of the following properties:

(a) Exchange of a farm at Trujillo Alto.

(b) Sale of a farm known as Islote Juan Pérez.

(c) Sale of Industrial Development.

(d) Sale of the Calderón Farm.

The defendant admitted owing the commissions corresponding to farms (a) and (b).

The trial judge recognized the right to receive commission for the farm marked (c). But not so as to property (d). Plaintiff assigns as an error having been denied his right to receive commission for the sale of the Calderón Farm. The defendant maintains it was an error to order him to pay commission for the sale of the Industrial Development.

Let us consider first the case of the Calderón Farm. The parties agreed that in those deals in which plaintiff shall have intervened and the defendant shall have been the purchaser, plaintiff would be the real estate broker once the farm was sold and he would be entitled to receive a 2 percent commission on the selling price (see clause 3 of the letter-contract).

To dispose of this question it should suffice to consider that the evidence establishes that the defendant approached the Calderóns directly for the purchase of this farm and made it clear to the plaintiff that he should not take part in the transaction. The trial court made the following findings in relation to this matter:

"Against the express instructions given by the defendant to the plaintiff—to the effect that he was not to intervene in the purchase of the so-called 'Calderón Farm'—he talked to one or two of the heirs of Don Casto Luis Calderón, informing them that Dr. Maldonado was interested in purchasing the farm.

"These steps taken by defendant [sic] without any authorization whatsoever, did not yield any result. On December 21, 1957, the plaintiff [sic]—with the intervention of Carlos Calderón, real estate broker and a relative of the Calderóns—purchased from them the Calderón Farm, consisting of 539.949 cuerdas."

So, the trial court did not err in not allowing commission for the sale of the Calderón Farm, inasmuch as the right to receive such commission was subject to his having participated in the purchase of the farm, as stated in the third clause of the letter-contract.

Let us consider now the sale of the Industrial Development Farm. The plaintiff did not participate in the acquisition of this real estate property. His right to obtain a commission is based on clause 2 of the letter-contract inserted hereinbefore.

The trial court "as a matter of fact and of law holds that, even though the plaintiff did not promote the sales of the 'Islote Juan Pérez' and 'Industrial Development' farms, but took part directly and fruitfully in the purchase of the former, the defendant is under the obligation to pay him a compensation equivalent to 2 percent of the selling price of such farms. This right was acquired by the plaintiff by virtue of the contract made between the parties, stated in

said letter of December 9, 1957, which designated the plaintiff as exclusive broker in the sale of said property and guaranteed him a 'commission amounting to 2 percent of the selling price.' "

Concerning the "Islote Juan Pérez" farm, defendant admitted he owed the corresponding commission. In the preceding finding the trial court makes it clear that plaintiff did not take part either in the purchase or the sale of the Industrial Development farm. Nevertheless, it apparently considered the matter covered by the same provision of the letter-contract covering the Islote Juan Pérez and which guarantees the plaintiff a 2 percent commission (clause 3). Yet, this provision refers only to the properties in which the plaintiff "shall have participated and I shall have been the purchaser." And in the Industrial Development farm the plaintiff did not participate either in the purchase or the sale. The right of the plaintiff, if any, would stem from clause 2 copied above. But such clause was rendered invalid[1] by the letter of March 3, 1959, and the farm was sold on July 31, 1961, without any intervention from the plaintiff.

He points out that since an appeal is not taken from the grounds of the judgment, but from the judgment itself it is proper for the Court to decide that the judgment entered by the trial court granting commission for the sale of the Industrial Development farm is correct, because during the effectiveness of the contract, that is, before it was rescinded on March 3, 1959, the defendant had agreed to sell the Industrial Development and had afterwards rescinded the contract. He states that it is then that his right to receive commission accrues. He cites the case of *Torres* v. *Arbona*,

---

[1] The plaintiff in the proceeding in which he is appellant admits on page 5 of his brief that the defendant rescinded the contract of December 7, 1957 by his letter of March 3, 1959. This is the reasonable inference from the findings of fact of the trial court to the effect that the defendant had sent the letter to the plaintiff on March 3, 1959.

*Jr.*, 72 P.R.R. 719, 726 (1951) where we decided that a contract of sale being perfected through the activities of a real estate broker, he is entitled to his commission "even though the contract is subsequently rescinded, which cannot affect the rights of the real estate broker, who must receive the proper compensation, pursuant to § 1711 of the Civil Code."

There is a difference between the situation in the case at bar and the one before us in the *Arbona* case. In the former the broker engaged in activities which brought about the consummation of the contract which was afterwards rescinded. He certainly was entitled to collect for these. The fact that once the contract has been perfected the parties rescinded it should not affect his right to receive his commission. In the present case the broker did not intervene in the negotiations which culminated in the agreement. There is nothing which entitles him to receive commission. His right to receive it would only accrue upon the consummation of a definite contract for the sale of the Industrial Development.[2] We have already seen that this sale contract was perfected after the defendant had rescinded the contract he had with the plaintiff since December 1957.

Therefore, the trial court erred in granting him a commission for the sale of the Industrial Development farm.

Judgment will be modified pursuant to the terms of this opinion.

---

[2] Besides, in any event, *Torres v. Arbona, Jr.*, 72 P.R.R. 719 (1951) establishes a general rule in the absence of an agreement between the parties. In this case the parties had a special agreement which presupposed the consummation of a sale contract, not merely its arrangement.